EL PUEBLO DE PUERTO RICO, peticionario, *v.* TRIBUNAL SUPERIOR DE PUERTO RICO, SALA DE AGUADILLA, HON. ANTONIO BAUZÁ TORRES, JUEZ, demandado.

*Número:* O-75-208          *Resuelto:* 2 de octubre de 1975

*Miriam Naveira de Rodón, Procuradora General,* y *Américo Serra, Procurador General Auxiliar,* abogados del peticionario; *Domingo Ríos Román,* abogado de Richard McConnie, Héctor G. Nevárez, Angel Marichal, Tomás Lozano y Miguel Ramos Rodríguez, interventores en este caso.

PER CURIAM: Envuelve este caso la interpretación de la Ley Núm. 234 de 23 de julio de 1974, en que se enmienda el Art. 1 de la Ley Núm. 77 de 12 de agosto de 1925, 24 L.P.R.A. sec. 791, relativo al delito de adulteración de leche.

El 14 de noviembre de 1974 se radicó la siguiente acusación en el Tribunal Superior, Sala de Aguadilla:

"Los referidos acusados, Richard McConnie, Presidente y Director, Héctor G. Nevárez, Tesorero, Secretario y Director, Angel Marichal, Director, Tomás Lozano, Administrador, y Miguel Ramos Rodríguez, Empleado de la Borinquen Dairy, Inc., que opera una planta de pasterización de leche en Aguadilla, Puerto Rico, allá en o por el día 7 de agosto de 1974 y en Aguadilla, Puerto Rico, que forma parte del Tribunal Superior de Puerto Rico, Sala de Aguadilla, Puerto Rico, intencional, voluntaria y criminalmente, tenían almacenada en su poder, para la venta y consumo humano, como pura, leche de vaca pasterizada, adulterada con un veintisiete punto ocho (27.8) por ciento de agua añadida artificialmente, según análisis químico."

El referido artículo de ley, 24 L.P.R.A. sec. 791, en que se funda la acusación, lee así:

"Toda persona que adulterare o diluyere leche y toda persona que así adulterada o diluida, la vendiere, ofreciere, o tuviere en

venta, o que la transportare o almacenare con el fin de dedicarla al consumo humano, o con el fin de someterla al proceso de pasterización o a cualquier otro proceso en preparación para consumo humano, y toda persona que usare leche adulterada o diluida para fines industriales, cuando se destine a la preparación de alimentos para el consumo humano, será culpable de delito menos grave y convicta que fuere, castigada en la primera violación con multa no menor de veinticinco (25) dólares, ni mayor de cien (100) dólares. La reincidencia se castigará con pena de cárcel no menor de un mes ni mayor de seis meses, multa de quinientos (500) dólares y la revocación de la licencia. Disponiéndose que para efectos de las secs. 791 a 795 de este título se considerará adulterada cualquier leche que contenga sustancia alguna que no haya sido autorizada por el Secretario de Salud mediante reglamentación al efecto, o cualquier sustancia venenosa o deletérea o cualquier otra sustancia extraña a la leche que pudiera perjudicar la salud pública."

El día señalado para la vista el juez sentenciador decretó el archivo y sobreseimiento de los casos por no haberse especificado por el Secretario de Salud las sustancias que llevan a la clasificación de la leche como un producto adulterado. El ministerio público acude ante nos en solicitud de *certiorari* para revisar dicha resolución.

En el informe de la Comisión de Salud y Bienestar del Senado de 13 de mayo de 1974 se expresa lo siguiente sobre el propósito de la citada Ley Núm. 234:

"El propósito del P. del S. #958 es enmendar la Sección 1 de la Ley #77 del 12 de agosto de 1925, según enmendada, para definir lo que constituye 'adulterar' la leche, ya que la ley vigente adolece de esta definición. El mismo se corrige disponiendo que *'se considerará adulterada cualquier leche que contenga sustancia alguna que no haya sido autorizada por el Secretario de Salud mediante reglamentación al efecto,* o cualquier sustancia venenosa o deletérea o cualquier otra sustancia extraña a la leche que pudiera perjudicar la salud pública.'

*La medida castiga como delito la adición de cualquier sustancia extraña a la leche en su estado natural,* evitando así la adición de leche en polvo, o la presencia en la leche de

sustancias tales como antibióticos o drogas administradas a las vacas que después pasan a la leche que producen y éstas pudieran resultar nocivas a los consumidores que sean alérgicos a las mismas." (Bastardillas nuestras.)

■ Tanto a la luz del texto de la Ley Núm. 234 como de su historial legislativo es incorrecta la determinación del ilustrado tribunal de instancia al efecto de que para probar la adulteración de la leche el Secretario de Salud tiene que enumerar mediante reglamentación la infinidad de sustancias que no puedan añadirse a la leche. Estimamos, por lo contrario, que para probar el delito de adulteración de leche basta con probar que dicho producto contiene cualquier sustancia extraña al mismo que no haya sido autorizada afirmativamente por el Secretario de Salud mediante reglamentación al efecto, o cualquier sustancia venenosa o deletérea o cualquier otra sustancia extraña a la leche que pudiera perjudicar la salud pública.

■ Adviértase además, independientemente de lo anterior, que está en vigor todavía el Reglamento Sanitario Núm. 133 de 18 de mayo de 1970, en que se determinan específicamente los criterios a examinarse para concluir que se ha adulterado leche. 24 R.&R.P.R. sec. 790–508(a)·(1). No hallamos incompatibilidad entre dicha disposición reglamentaria y la Ley Núm. 234 de 23 de julio de 1974.

*Se revocará en consecuencia la resolución recurrida y se devolverá el caso al tribunal de instancia para la continuación de los procedimientos, en modo conforme a las normas aquí sentadas.*